PEOPLE v DAMASKA

Docket No. 60431. Decided December 29, 1978. On application by the people for leave to appeal the Supreme Court, in lieu of granting leave to appeal, reversed the judgment of the Court of Appeals and reinstated the defendant's convictions.

Donald L. Damaska was convicted in Kent Circuit Court, Stuart Hoffius, J., of two counts of breaking and entering a building with intent to commit larceny. The defendant argues that the arresting police officers did not have probable cause to seize an electronic calculator, which later proved to be stolen, from the back seat of the car the defendant was driving. The Court of Appeals, R. B. Burns, P.J., and D. E. Holbrook and Breighner, JJ., reversed the convictions in an unpublished per curiam opinion (Docket No. 28273). The people apply for leave to appeal. *Held:*

The observations by police that the defendant was driving a car with its lights extinguished at night across a parking lot near an office building which had been burglarized twice in recent weeks, that the defendant was acting unusually nervous when police stopped him on the highway, that an office machine was partially hidden beneath some clothing on the back seat of the car, and that there was an embossed tape on the machine with a name other than the defendant's gave the officers probable cause to seize the machine and to make a further investigation.

The judgment of the Court of Appeals is reversed and the defendant's convictions are reinstated.

Justice Levin, with Chief Justice Kavanagh, would deny leave to appeal.

1. Before the search of the automobile and calculator, the police did not have probable cause to believe that a crime had been committed and that the calculator was evidence of the crime. They may have been suspicious, they may even had reason to continue the investigation, but they could not do so by entering the automobile and searching it or the calculator by examining it without probable cause to believe that a crime had been committed and there was evidence of that crime there to be found. The name taped on the calculator was not deter-

mined until after the officer had searched the automobile and calculator by examining it. Therefore, the name taped on the calculator is not a pertinent fact, and cannot be considered in determining whether there was probable cause. *One* calculator, partially concealed or not, is likely to be the personal property of the occupant of an automobile. There is nothing inherently suspicious about possession of one calculator in an automobile; there is no implication that it was acquired by theft. It is commonplace to cover articles of value in an automobile to conceal their presence from thieves. Assuming that the police, either because of the hour or Damaska's nervousness, had reason to be suspicious, that would not, even coupled with observation of a partially concealed calculator, provide a reasonable basis for concluding that Damaska had stolen the calculator and, therefore, they did not have a basis for concluding that the calculator was evidence of a crime that had been committed.

2. The United States Supreme Court has authorized *investigatory stops* on less than probable cause. It has authorized *protective searches* for weapons as an incident of an investigatory stop. It has never authorized an *investigatory search* as part of an investigatory stop. Thus, although the police in this case may have had reason to continue their investigation, they were without authority to conduct an investigatory search simply because no officer at any time under any circumstances is authorized to do so. The search here was not a protective search of the defendant's person for weapons. The police entered his automobile to look for evidence of crime and, thus, what they found is within the constitutional proscription.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Donald A. Johnston, III,* Chief Appellate Attorney, for the people.

*George S. Buth* for defendant.

PER CURIAM. Donald Lewis Damaska was convicted following a bench trial of two counts of breaking and entering a building with intent to commit larceny. MCLA 750.110; MSA 28.305. The Court of Appeals reversed the convictions in an unpublished per curiam opinion. The prosecutor

applies for leave to appeal from that decision and, under GCR 1963, 853.2(4), we reverse the judgment of the Court of Appeals and reinstate the convictions.

The dispositive issue in this case is whether the arresting police officers had probable cause to seize an electronic calculator, which later proved to be stolen, from the back seat of the car defendant was driving.

During the late evening hours of March 11, 1975, two state police officers observed a car with its lights extinguished being driven across a parking lot from the vicinity of a Farm Bureau Insurance building. The lights were switched on as the car pulled onto the highway. This conduct, combined with the fact that the businesses were closed and the officers' awareness that the Farm Bureau Insurance office had been the subject of two burglaries in recent weeks, prompted the officers to make an investigatory stop of the car. The defendant, "acting quite nervous", was unable to produce a driver's license and produced a vehicle registration that did not accurately reflect his name. The defendant stated that he had been drinking and had parked in the Farm Bureau parking lot to "sleep it off"; although the defendant did not have the appearance of having been drinking. One of the officers, using a flashlight, noticed what appeared to be a portion of a business machine protruding from beneath some clothing on the back seat and reached in and removed an electronic office calculator. The defendant explained that the calculator belonged to him; however, the calculator had a piece of plastic tape attached to it with the name "R. L. Luxmore" embossed on it. A radio check revealed that the calculator came from the Farm Bureau Insurance building and an

investigation of that building, and a nearby building, revealed that both had been burglarized.

We believe the facts gave the officers probable cause to proceed as they did. The pertinent facts supporting this conclusion are: (1) the defendant emerged from a business parking lot late at night with his car lights extinguished; (2) the business was the subject of recent burglaries; (3) the defendant acted unusually nervous when stopped; (4) an office machine was observed partially hidden beneath some clothing on the back seat of the car; (5) the name taped on the calculator differed from the defendant's. We held in *People v Howell,* 394 Mich 445; 231 NW2d 650 (1975), that the fact further investigation must be undertaken to establish that discovered property is stolen does not preclude a finding of probable cause for a search and seizure of the property when other factors combine to establish probable cause. The facts in the instant case form an equally compelling combination and require a similar finding.

WILLIAMS, COLEMAN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.

LEVIN, J. *(dissenting).* Leave to appeal should be denied.

The memorandum opinion states as "pertinent fact" (5), supporting the conclusion that the officers had "probable cause to proceed as they did",[1] that "the name taped on the calculator differed from the defendant's". The name taped on the calculator was not determined until after the officer had searched the automobile and calculator by

---

[1] The statement that the police had probable cause to "proceed as they did" tends to obscure the factual and legal bases of the Court's decision.

examining it. Therefore, the name taped on the calculator is not a pertinent fact, and cannot be considered in determining whether there was probable cause to search the automobile or the calculator.

Before the search of the automobile and calculator, the police did not have probable cause to believe that a crime had been committed and that the calculator was evidence of such crime. They may have been suspicious, they may even had reason to continue the investigation, but they could not do so by entering the automobile and searching it or the calculator by examining it without probable cause to believe that a crime had been committed and there was evidence of that crime there to be found.

The United States Supreme Court has authorized *investigatory stops* on less than probable cause. It has authorized *protective searches* for weapons as an incident of an investigatory stop. It has never authorized an *investigatory search* as part of an investigatory stop. Thus, although the police in the instant case may have had reason to continue their investigation, they were without authority to conduct an investigatory search simply because no officer at any time under any circumstances is authorized to do so.

The limits of police authority during an investigatory stop have been carefully circumscribed by the United States Supreme Court. In *Sibron v New York,* 392 US 40, 65-66; 88 S Ct 1889; 20 L Ed 2d 917 (1968), decided the same day as the seminal case of *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), the Court held that, absent probable cause for an arrest or search, evidence obtained as a result of a search for articles other than weapons must be suppressed:

"Even assuming *arguendo* that there were adequate grounds to search Sibron for weapons, the nature and scope of the search conducted by Patrolman Martin were so clearly unrelated to that justification as to render the heroin inadmissible. The search for weapons approved in *Terry* consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault. Only when he discovered such objects did the officer in *Terry* place his hands in the pockets of the men he searched. In this case, with no attempt at an initial limited exploration for arms, Patrolman Martin thrust his hand into Sibron's pocket and took from him envelopes of heroin. *His testimony shows that he was looking for narcotics, and he found them.* The search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception—the protection of the officer by disarming a potentially dangerous man. Such a search violates the guarantee of the Fourth Amendment, which protects the sanctity of the person against unreasonable intrusions on the part of all government agents." (Emphasis changed.)

The search here was not a protective search of Damaska's person for weapons. The police entered his automobile to look for evidence of crime and, thus, what they found is within the *Sibron* proscription.

In *Adams v Williams,* 407 US 143, 146; 92 S Ct 1921; 32 L Ed 2d 612 (1972), the Court said of protective searches as part of an investigatory stop:

"The purpose of this limited search is *not to discover evidence of crime,* but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable, whether or not carrying a concealed weapon violated any applicable state law. So long as the officer is entitled to make a forcible stop, and has reason to

believe that the suspect is armed and dangerous, he may conduct a weapons search *limited in scope to this protective purpose.*" (Emphasis supplied.)

The search here was not "limited in scope to [the] protective purpose". It was an investigatory search and, therefore, probable cause to believe that a crime had been committed and evidence of that crime would be found was required before the search.

In *United States v Brignoni-Ponce,* 422 US 873, 881-882; 95 S Ct 2574; 45 L Ed 2d 607 (1975), where the Court dealt with investigatory stops by border patrol officers, the Court reaffirmed that investigatory detention or search must be based on probable cause, absent consent:

"The officer may question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, *but any further detention or search must be based on consent or probable cause.*" (Emphasis supplied.)

In the companion case of *United States v Ortiz,* 422 US 891, 896; 95 S Ct 2585; 45 L Ed 2d 623 (1975), the Court said:

"A search, even of an automobile, is a substantial invasion of privacy. To protect that privacy from official arbitrariness, *the Court always has regarded probable cause as the minimum requirement for a lawful search.*" (Emphasis supplied.)

The police did not, before the search, have probable cause to believe that the calculator partially concealed by a coat on the back seat had been stolen. Before the officers entered the automobile they had determined that the vehicle was not stolen. Although Damaska did not have a driver's

license on his person, it was determined that a valid operator's license had been issued to him. Damaska had not been arrested before the police entered the vehicle.

Assuming that the police, either because of the hour or Damaska's nervousness, had reason to be suspicious, that would not, even coupled with observation of a partially concealed calculator, provide a reasonable basis for concluding that Damaska had stolen the calculator and, therefore, they did not have a basis for concluding that the calculator was evidence of a crime that had been committed.[2]

To state it differently, unless the police had probable cause to arrest Damaska and charge him with theft of the calculator or possession of a stolen calculator before they entered and searched the automobile and calculator by examining it, they perforce did not have probable cause to conduct such a search. That is because unless the police had probable cause to believe that a crime had been committed—theft of the calculator—they did not have reason to search for evidence of that crime.

---

[2] In *People v Howell,* 394 Mich 445, 446-447; 231 NW2d 650 (1975), the officer "observed, in plain sight, a small pouch-type bag in the car which he could see contained chains, watches and rings". He observed one man in the vehicle pass something from the front seat to another man in the back. The officer returned to the automobile and asked what happened to the bag. The response was, "What bag?" We concluded that the officer had seen "a variety and quantity of jewelry *more akin to the results of a theft than to property likely to be the personal belongings of an occupant of the automobile*" and that, coupled with the facts that the bag was not of the kind that a jewelry salesman would normally use, the furtive behavior, and the response "[w]hat bag?", constituted probable cause for a search and seizure.

*One* calculator, partially concealed or not, is likely to be the personal property of the occupant of an automobile. There is nothing inherently suspicious about possession of one calculator in an automobile; there is no implication that it was acquired by theft. It is commonplace to cover articles of value in an automobile to conceal their presence from thieves.

The police did not, before the search, have probable cause to believe that Damaska had stolen the calculator or to arrest him for that crime. They did not have probable cause to search the automobile for evidence of crime because they did not have probable cause to believe that a crime had been committed.

I would deny leave to appeal.

KAVANAGH, C.J., concurred with LEVIN, J.