PEOPLE v SIZEMORE

Docket No. 67054. Submitted November 16, 1983, at Lansing.—Decided March 20, 1984.

Thomas Sizemore was convicted of breaking and entering an occupied dwelling with intent to commit larceny, Washtenaw Circuit Court, William F. Ager, J. Defendant was one of three occupants of an automobile stopped by sheriff's deputies who observed the car parked, its lights out and engine running, in a high-crime area in the early morning hours. Upon stopping the car, defendant and the car's driver were recognized as persons who had previously been involved in break-ins. A cable television box, similar to one which the deputies knew had been stolen recently, was recovered from the car after the back-seat passenger attempted to conceal the box. Defendant appealed, alleging that the stop of the car was impermissible, that the intrusion into the car to recover the box was not based on probable cause, and that defendant's arrest was improper because the deputies had no probable cause to believe that defendant had committed a felony. *Held:*

1. Probable cause is not necessary to conduct an investigatory stop which is based on facts leading a reasonable police officer to suspect that criminal activity is taking place. In this case, the circumstances were sufficient to create a reasonable suspicion of criminal activity. The stop of the car was not improper.

2. The deputies were justified in recovering the box from the car. The box was partly visible from outside the car, one of the occupants was attempting to conceal the box, and two of the occupants were known to have been involved in past break-ins. The facts known to the deputies led to the conclusion that probable cause existed to believe stolen property was in the car, and exigent circumstances allowed the seizure without a search warrant.

3. The arresting officer had probable cause to believe the box

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 68 Am Jur 2d, Searches and Seizures §§ 33, 58, 103.

Law enforcement officer's authority, under Federal Constitution, to "stop and frisk" person—Supreme Court cases. 32 L Ed 2d 942.

[3] 5 Am Jur 2d, Arrest §§ 24, 32.

was stolen. The fact that the value of the box was unknown to the officer is not determinative, since the defendant was initially arrested for the misdemeanor of receiving and concealing stolen property, rather than the felony of which defendant was ultimately convicted.

Affirmed.

1. CRIMINAL LAW — INVESTIGATORY STOP — SUSPICION OF CRIMINAL ACTIVITY.

Police may properly make an investigatory stop, without the existence of probable cause, if the stop is based upon specific, articulable facts which, when taken together with the rational inferences to be drawn from these facts, would lead a reasonable police officer to believe that criminal activity may be taking place.

2. SEARCHES AND SEIZURES — PROBABLE CAUSE — AUTOMOBILE SEARCH.

Probable cause to search an automobile existed where, after properly stopping the automobile for investigatory purposes because of the unusual activity of its occupants in the early morning hours, the police officers recognized two of the occupants as having been involved in past break-ins, the back-seat passenger had been making furtive gestures and attempted to conceal a metal box under the front seat, and the occupants of the automobile all professed a lack of knowledge of the box; under these facts, exigent circumstances obviated the need for a search warrant.

3. ARREST — PROBABLE CAUSE.

Probable cause to arrest a defendant does not require proof beyond a reasonable doubt that the defendant has committed a crime.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *David A. King,* Assistant Prosecuting Attorney, for the people.

*Gerald J. Van Wambeke,* for defendant on appeal.

Before: V. J. Brennan, P.J., and M. J. Kelly and G. R. Cook,* JJ.

G. R. Cook, J. Following a bench trial conducted in the Washtenaw County Circuit Court, defendant was convicted of breaking and entering an occupied dwelling with the intent to commit larceny. MCL 750.110; MSA 28.305. Defendant was sentenced to three years probation and ordered to pay costs and make restitution. Defendant now appeals as of right.

James Fidler and his wife discovered that their home in Ypsilanti Township had been broken into on March 13, 1982, at approximately midnight. Several items had been taken, including a television, two pairs of binoculars, and a cable television box. The police were called and the crime, including a description of the stolen items, was detailed on a briefing sheet which was read by on-duty sheriff's deputies prior to the beginning of their shift each day.

On March 15, 1982, Washtenaw County Sheriff's Deputy Lester Wallen, an 11-year police veteran, and his partner, Willis Chapman, were patrolling an area of Ypsilanti Township known for its high incidence of larcenies and break-ins. The officers noticed a car on Parkwood in front of an apartment building while driving northwest on Ford Boulevard. The car's motor was running, but its lights were turned off. The officers could see people in the vehicle and noticed one person in the back leaning forward. This person's shoulders would disappear from sight, and it was obvious to Deputy Wallen that this individual was attempting to place something underneath the seat.

As the officers approached, the subject vehicle

* Cicuit judge, sitting on the Court of Appeals by assignment.

began to move forward with its lights still off. Deputy Chapman motioned for the car to stop. As it stopped, Deputy Wallen recognized the driver of the vehicle as a person who had been involved in break-ins. He also recognized defendant from having previously arrested him for unrelated break-ins in Pittsfield Township.

Deputy Wallen got out of his patrol car and, using his flashlight, he looked through one of the stopped vehicle's windows. He could see a portion of a black metal object in a garbage bag protruding slightly from underneath the driver's seat. Deputy Wallen asked the vehicle's three occupants to exit from the car. They were patted down for weapons, but none were found. Deputy Wallen then retrieved the garbage bag from the back seat and determined that the metal object he had observed was a cable television box. Deputy Wallen recalled that one had been listed as stolen on that evening's briefing sheet.

After informing the occupants of the car of their *Miranda*[1] rights, Deputy Wallen questioned them concerning the ownership of the cable television box. Each subject denied knowledge of the box, although at some point one of the passengers said that he had seen the box but did not know what it was.

The men were then taken into custody for further investigation. Deputy Wallen stated at trial that, while defendant and his companions were not informed that they were under arrest at that time, Deputy Wallen considered defendant to have been arrested for possession of stolen property over $100.

At the police station, defendant was again in-

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

formed of his *Miranda* rights. During a taped interview, defendant admitted that he and a cohort had broken into the Fidlers' home and had stolen a television, two sets of binoculars, and a cable television box.

Defendant first contends that the police officers' decision to stop the car in which he was riding violated his Fourth Amendment rights, citing *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). Under *Terry* an investigatory stop is permissible if it is based upon specific, articulable facts which, when taken together with the rational inferences to be drawn from these facts, would lead a reasonable police officer to believe that criminal activity may be afoot. Probable cause is not required. *People v Martin,* 99 Mich App 570, 575-576; 297 NW2d 718 (1980), *lv den* 413 Mich 926 (1982).

In this case, the police possessed a reasonable suspicion of possible criminal activity at the time of the stop. The officers noted a parked vehicle in a high crime area with its lights off and its engine running. The occupant in the back seat was, in Deputy Wallen's words, "obviously attempting to place something underneath the seat" and, when the patrol car approached the parked car, it began to move with its lights off. See *People v Olson,* 98 Mich App 207, 210-211; 296 NW2d 218 (1980), *lv den* 410 Mich 899 (1981).

Defendant next argues that even if the initial stop was constitutionally permissible, the subsequent intrusion into the automobile and the seizure of the cable television box was violative of the Fourth Amendment because the intrusion was not based upon probable cause.[2] After the stop of the

---

[2] Defendant also argues at some length that the intrusion was not permissible as a protective search for weapons on less than probable

vehicle, the deputies obtained further information pertinent to a determination of whether probable cause to search existed. Deputy Wallen identified both the driver of the vehicle and defendant as having been involved in other break-ins. In addition, before he actually entered the vehicle which defendant occupied, Deputy Wallen could see the edge and corner of a metal box contained in a garbage bag underneath the driver's seat. One of the passengers in the vehicle placed his feet over the box as if to hide it.

We conclude that, under the totality of the circumstances, the deputies had probable cause to conduct a search. The facts of this case are not dissimilar from those presented in *People v Damaska,* 404 Mich 391; 273 NW2d 58 (1978). One significant distinction is that in *Damaska* the officers noted that the name taped on the seized item, a calculator, was not defendant's, while no comparable circumstance is presented here. However, this case also poses facts, not present in *Damaska,* leading to the conclusion that probable cause existed, namely: (1) Deputy Wallen's knowledge that two of the three occupants in the vehicle had been involved in break-ins in the past, (2) the furtive gestures of the back-seat passenger, (3) the efforts by this passenger to obstruct the cable television box with his feet, and (4) the vehicle's occupants professed lack of knowledge of the box. As in *Damaska, supra,* p 394, the facts in this case "form an equally compelling combination" and mandate a finding of probable cause. An immediate search of the vehicle which defendant occupied was per-

cause because the police were not motivated out of concern for their safety. See *People v Rosales,* 406 Mich 624; 281 NW2d 126 (1979), *cert den* 444 US 1025 (1980). We decline to discuss the merits of this contention because the prosecution does not attempt to justify the search as one intended for the deputies' protection. Instead, the prosecution argues that probable cause to search existed.

missible as exigent circumstances existed. The automobile might never have been located again had the officers taken the time to obtain a warrant. *Chambers v Maroney,* 399 US 42, 51; 90 S Ct 1975; 26 L Ed 2d 419 (1970).

Defendant finally asserts that his arrest was improper because the police did not have probable cause to believe that he had committed a felony. Defendant's argument is based upon: (1) the contention that the officers had no reason to believe the box was stolen and (2) Deputy Wallen's testimony that he did not know how much cable television boxes were worth.

We find that Deputy Wallen did have probable cause to believe the cable television box was stolen. At the time of the arrest, in addition to the circumstances which supported the search of the vehicle, the deputies also knew that a cable television box of the type reported stolen by the Fidlers was in defendant's possession. Moreover, the wire on the back of this box had been broken as if it had been "jerked" apart from where it was originally connected. While the totality of these circumstances did not constitute proof beyond a reasonable doubt, they certainly would allow a person of reasonable caution to believe that an offense had been committed. *People v Rodriguez,* 83 Mich App 606, 609; 269 NW2d 199 (1978).

Defendant further asserts that, since the deputies did not know what a cable television box was worth, he could not permissibly be arrested for a felony, and no misdemeanor was committed in the officers' presence. See *People v Ward,* 73 Mich App 555, 557; 252 NW2d 514 (1977). We disagree. First, probable cause to arrest does not require proof beyond a reasonable doubt. It was certainly not unreasonable for the deputies to assume that cable

television boxes are worth more than $100 and, therefore, to believe that a felony had been committed by defendant. Second, assuming, *arguendo,* that probable cause to arrest for a felony was not possessed by the deputies, they could minimally conclude that a misdemeanor was being committed in their presence, namely, receiving and concealing stolen property with a value under $100.[3]

Affirmed.

---

[3] Deputy Wallen stated that he arrested defendant for receiving and concealing stolen property. Defendant later confessed to the break-in, however, and the charge was modified.